GEORGE L. MONTAGUE *vs.* LYDIA L. DAWES.

One who undertakes to execute a power of sale contained in a mortgage is bound to the observance of good faith and a suitable regard for the interests of the mortgagor; and cannot shelter himself under a bare literal compliance with the conditions imposed by the terms of the power.

Although such power of sale authorizes the mortgagee or his assignee to become the purchaser at the sale, yet if he attempts to do so he will be held by a court of equity to the strictest good faith and the utmost diligence, in the execution of the power, for the protection of the rights of the mortgagor; and if he fails in either, the mortgagor may redeem the land, notwithstanding the sale.

BILL IN EQUITY, filed within three years from the time possession was taken, to redeem a lot of land with the buildings thereon in Boston from a mortgage. The following facts were agreed:

On the 12th of October 1860 the plaintiff mortgaged the premises to Brooks and Ball, to secure certain notes. The mortgage contained a power of sale, authorizing the assignee thereof,

for a breach of condition which existed at the time of the assign-ment (hereinafter mentioned) and ever since, to sell the premises and all benefit and equity of redemption of. the plaintiff therein, at public auction ; such sale to be in Boston, without further demand or notice, except giving notice of the time and place of sale in each of three successive weeks in some newspaper printed in the county of Suffolk, and authorizing the assignee to buy at such sale if he should be the highest bidder thereat, and provid-ing that no other purchaser should be liable for the application of the purchase money.

On the 16th of May 1862 the mortgage and notes were as-signed to Joseph M. Everett, at the request of the defendant's husband, Henry Dawes, who furnished the money to pay for said assignment, and Everett took the assignment in his own name, at the request of said Henry, and for his benefit, he not himself furnishing or receiving any money, or having any interest therein. On the 21st of May, Everett made an entry upon the premises in presence of Norris and Hassam, hereinafter men-tioned, for the purpose of foreclosure. On the 24th of June 1862, Everett sold the premises at auction, claiming to act under the power of sale. His affidavit setting forth the acts done by him in making the sale, and sworn to before Hassam, stated, among other things, that he advertised the sale by publishing in the Daily Evening Traveller, once in each of three successive weeks, the following notice : " By Henry A. Norris, Office No. 10 Phœnix Building. Mortgagee's sale. By virtue of a power contained in a certain deed of mortgage made by George L. Montague, dated Oct. 12, 1860, recorded with Suffolk deeds, lib. 787, fol. 180, and for breach of conditions thereof, will be sold at public auction on Tuesday, June 24, 1862, at 12 o'clock, M., at office aforesaid, all and singular the premises in said deed granted, and all the benefit and equity of redemption of said Montague the grantor, his heirs, executors or assigns therein, the same being situated on Medford Court, and being lot No. 3 on the plan of lands on and in the vicinity of Medford Court, drawn by Alexander Wadsworth, dated June 27, 1845, recorded with Suffolk deeds. Reference is made to said deed for a

more particular description. Per order of the assignee of said mortgagee."

The above notice was printed on the 13th, 18th and 23d of June ; and the sale was made at the office of Norris, in the second story of the Phœnix Building in Boston. The location of this building was given in the Boston Directory of the year of the sale and for years previous. The premises, and the equity of redemption of Montague therein, were struck off to Henry Dawes, he being the only bidder, for $2200. No warranty or explanation of the title was given at the sale, except what was contained in the notice and mortgage ; and the only persons present at the sale were Henry Dawes, Norris, Everett and Hassam ; the two latter being at their usual place of business, occupying desks in the office of Norris, and Hassam acting as attorney of Henry Dawes in connection with the sale. A deed was made by Everett to Henry Dawes, dated June 27th 1862, purporting to convey all the right, interest and estate which Montague had at the time of making the mortgage, and all of Everett's right, title and interest therein. No money or other thing passed between them. The affidavit of Everett setting forth his acts was duly recorded.

In a conversation, Montague told Henry Dawes that in his opinion the premises had not been advertised long enough ; and on the 9th of July 1862, Everett, without any consideration passing between them, made an assignment of the mortgage and notes to Henry Dawes, who, claiming to act under the power of sale, offered the premises for sale at auction on the 31st of July 1862. The following advertisement of the sale was pub- .ished in the Traveller on the 9th, 18th and 26th of July : " By Henry A. Norris, Office No. 10 Phœnix Building. Mortgagee's sale. By virtue of a power contained in two certain deeds of mortgage, severally made by George L. Montague, dated re- spectively Oct. 12, 1860, Jan. 8, 1861, recorded with Suffolk deeds, lib. 787, fol. 180, lib. 791, fol. 318, and for breach of con- ditions thereof, will be sold at public auction, on Thursday, the thirty-first day of July, 1862, at 12 o'clock, M., at office aforesaid, all and singular the premises in said deeds granted, and all the

benefit and equity of redemption of the said Montague, the grantor, his heirs, executors, or assigns therein, the same being situated on Medford Court, and being lot No. 3 and lot No. 5 on a plan of lands on and in the vicinity of Medford Court, drawn by Alexander Wadsworth, dated June 27, 1845, recorded with Suffolk deeds. For more extended description thereof, see deeds aforesaid, or apply to the auctioneer. Per order of the assignee of said mortgagee."

This sale was made at the office of Norris, and the premises were struck off to John D. Dunbar, the only bidder therefor, for $2150; he acting at the request of Dawes, and to protect his rights in the premises. Dawes, in his affidavit setting forth his acts done in execution of the power of sale, stated that, in addition to the public advertisement, he sent written notices of the intended sale to George L. Montague, the mortgagor, and Edward T. Talbot, a subsequent mortgagee; and that he made and delivered a deed of the premises to Dunbar. No money or other thing was paid by Dunbar, but he, at the request of Henry Dawes, conveyed the premises to the defendant, and no money or other thing passed to Dunbar, but credit was given by the defendant to her husband, Henry Dawes, on an account existing between them, for $2150. No persons were present at this auction sale except Henry Dawes, Norris, Everett, Hassam, and one Leach, who attended at Montague's request, though not for the purpose of bidding. No warranty or explanation of the title was given at the sale, except what was contained in the notice and mortgage. The affidavit of Dawes was duly recorded.

The defendant had money left to her about twenty years ago, which her husband has managed for her, taking securities usually in her name, and rendering an account and settling with her about once a year; and the money credited by her was from the avails of the money left her.

The case was reserved by *Gray*, J., for the determination of the whole court.

*W. Gaston*, for the plaintiff.

*T. S. Dane*, for the defendant.

Montague *v.* Dawes.

WELLS, J. Upon the agreed statement of facts, Henry Dawes may be regarded as the real assignee of the mortgage by whom the power of sale was executed, and also the purchaser at the sale under the power, as well as the real defendant in this suit. He alone has paid any money for the title; he caused both sales to be made; he was the sole bidder at the auctions; his will and his interests controlled every disposition made of the property. The form of receiving payment from his wife, by way of a credit on account of her moneys which had been paid over to him twenty years before, can be treated in this court only as a mere form. We cannot regard the conveyance, so taken to her, as entitled to the protection which is accorded to a party purchasing and paying value in good faith for a title apparently perfect, and with no notice express or implied of any objection to the proceedings by which the sale was effected. Equity will not consent to be blind to the real nature of the transactions which underlies the formal proceedings. But, as the terms of the power permitted him to be purchaser, as well as seller, at the auction sale, the title thus conveyed will not fail for that reason, if the proceedings are otherwise unobjectionable.

One who undertakes to execute a power of sale is bound to the observance of good faith and a suitable regard for the interests of his principal. He cannot shelter himself under a bare literal compliance with the conditions imposed by the terms of the power. He must use a reasonable degree of effort and diligence to secure and protect the interests of the party who intrusts him with the power. A stranger to his proceedings, finding them all correct in form, and purchasing in good faith, may not be affected by his unfaithfulness. But whenever his proceedings can be set aside without injustice to innocent third parties, it will be done upon proof that they have been conducted in disregard of the rights of the donor of the power. When a party who is intrusted with a power to sell attempts also to become the purchaser, he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal. If he fail in either, he ought not to be permitted thereby to acquire any irrevocable rights which he can set up against the party whose interests he has sacrificed.

If we apply these principles to the facts of the present case, the result so obviously must be against the validity of the sale that it becomes unnecessary to determine precisely at what point of indefiniteness a notice will be deemed to be insufficient, so as to defeat a sale properly effected in other respects. Here the notice proved ineffectual to attract purchasers, as might reasonably have been anticipated from the meagre information it contained, its irresponsible character, and the place of sale selected, remote from the premises to be sold. With such a notice, and under such circumstances, a mortgagee, who is authorized to sell only at auction, finding himself to be the only bidder at the sale, cannot in good faith proceed with the sale and purchase the property for himself at his own price, and insist upon such a purchase as precluding the mortgagor from all right to redeem the property. The permission that he may be a purchaser at the sale will not justify such an abuse of the confidence reposed in him. The mortgagor is therefore entitled to redeem, as if no sale had been made.